UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                      :
APOTEX CORP.,                                         :
                                                      :
                            Plaintiff,                :
                                                      :
            -v-                                       :        18-CV-4903 (JMF)
                                                      :
HOSPIRA HEALTHCARE INDIA PRIVATE LIMITED, :                    <u>OPINION AND ORDER</u>
                                                      :
                            Defendant.                :
                                                      :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Apotex Corporation, a company that distributes pharmaceutical products in the

United States, sued Defendant Hospira Healthcare India Private Limited for breach of contract,

various torts, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Its claims arise out of an agreement between Apotex and Hospira's predecessor to jointly develop,

manufacture, market, and sell pharmaceutical products.  Hospira now moves, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the non-contract claims and damages

alleged in the First Amended Complaint.  Apotex opposes the motion and, separately, seeks leave to

file a second amended complaint.  For the reasons below, Hospira's motion to dismiss is largely

granted and Apotex's motion for leave to amend is granted.

## BACKGROUND

      The following facts — drawn primarily from the First Amended Complaint ("FAC") and

"other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,"

including "documents attached to the [c]omplaint, statements or documents incorporated into the

[c]omplaint by reference, and matters of which judicial notice may be taken," *In re Barclays

Liquidity Cross & High Frequency Trading Litig.*, No. 14-MD-2589 (JMF), 2019 WL 2269929, at

*1 (S.D.N.Y. May 28, 2019) (internal quotation marks omitted) — are assumed to be true for purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).

Apotex and Orchid Chemicals and Pharmaceuticals, Ltd., Hospira's predecessor, entered into an agreement (the "Agreement") in June 2003 to co-develop and jointly commercialize certain generic pharmaceutical products for sale in the United States. *See* Docket No. 34 ("First Amended Complaint" or "FAC") ¶¶ 14, 53. Under the Agreement, Orchid (later, Hospira) developed, gained regulatory approval for, and manufactured the generic drugs; Apotex commercialized the drugs for U.S. markets; and Apotex and Orchid shared costs and profits. *Id.* ¶¶ 14, 15. Orchid agreed to supply Apotex exclusively with the products covered by the Agreement and to provide replacement supply for any products for which Orchid could not meet Apotex's demand. *Id.* ¶¶ 42, 54. Orchid also agreed not to sell certain products in markets where Apotex sold its products. *Id.* ¶ 42. Apotex agreed to be supplied solely by Orchid and to share quarterly statements containing its sales statistics (units sold, sales price, and profit) with Orchid to determine the correct profit-sharing amounts. *Id.* ¶ 15, 40.

After years of a successful partnership, supply problems began to arise in 2010 when Hospira, Inc., and Hospira India (collectively, "Hospira") succeeded to Orchid's obligations under the Agreement. *See id.* ¶¶ 60, 63; Docket No. 57-1 ("Proposed Second Amended Complaint" or "PSAC") ¶¶ 16-17. Hospira produced all the products subject to the Agreement at a manufacturing facility in India called IKKT. FAC ¶ 17. The supply problems, which arose in part from problems at IKKT, were "episodic" at first. *Id.* ¶ 63. But from 2012 onward, Hospira "repeatedly and continuously" failed to supply the products and to do so in a timely manner. *Id.*; *see also id.* ¶¶ 65-72. The supply problems grew even worse after March and April 2018, when the United States Food and Drug Administration ("FDA") audited IKKT and "found numerous issues with Hospira's manufacturing practices." *Id.* ¶ 104. After the FDA audit, Hospira "stopped all manufacturing and

production processes" at IKKT. *Id.* And, in January 2019, Hospira told Apotex that it had decided to close IKKT permanently. PSAC ¶ 152.

Hospira's failure to supply products left Apotex unable to fulfill its supply obligations to customers in the United States, forcing Apotex to pay supply penalties and causing the company to lose some customers. *See* FAC ¶¶ 68, 121-24. Apotex alleges that, although Hospira stated that these supply problems arose from Hospira's own technical, manufacturing, supply, and financial problems, Hospira was actually creating and exploiting the supply problems intentionally. *See id.* ¶¶ 77, 87, 111. More specifically, Apotex alleges that Hospira was actually using its manufacturing and supply abilities, including at IKKT, to manufacture its own, competing product, which it then sold to Apotex's frustrated customers. *See id.* ¶¶ 86, 88. Apotex further alleges that Hospira used the confidential sales and pricing information (the information Apotex shared pursuant to the Agreement to determine profit shares) to identify Apotex's customers and to sell products to them at lower prices. *See id.* ¶ 89.

Apotex mitigated these supply problems — and Hospira argues, breached the exclusivity provision of the Agreement, *see* Docket No. 38 ("MTD Mem."), at 1 — by sourcing some products from another supplier. FAC ¶ 131. By the time IKKT closed, Apotex had stopped ordering certain products from Hospira, but continued to order others. *See id.* ¶¶ 132-133.

Apotex filed this suit against Hospira India in June 2018. *See* Docket No. 1. After Hospira filed a first motion to dismiss, *see* Docket No. 22, Apotex filed the First Amended Complaint. It includes a breach of contract claim, a FDUTPA claim, and several tort claims. FAC ¶¶ 142-209. Hospira now moves to dismiss for a second time, arguing that the statutory and tort claims are duplicative of the contract claim and that the parties' Agreement bars many of the alleged damages. *See* Docket No. 37; MTD Mem. 2. Hospira does not seek to dismiss the contract claim. *See* MTD Mem. 2. The parties appeared for oral argument on the motion to dismiss on May 6, 2019, *see*

Docket No. 54, and, afterward, filed supplemental letter briefs on issues raised during the argument, *see* Docket Nos. 63, 65, 67.

In addition to opposing the motion to dismiss, Apotex also now seeks leave to file a second amended complaint. *See* Docket No. 55; Docket No. 56 ("SAC Mem."). The proposed SAC adds allegations about Hospira's decision to close IKKT and adds counts alleging monopolization and attempted monopolization. *See* PSAC ¶¶ 152-153, 169-192. Apotex also seeks to add Hospira, Inc., as a party. *See* PSAC ¶ 17. Hospira opposes the motion to amend on grounds of prejudice, undue delay, and lack of good faith, but not futility. *See* Docket No. 60 ("SAC Opp."). Hospira also warns that if Apotex amends the complaint, it will move to dismiss the new counts for failure to state a claim. *See id.* at 6 n.3. Both parties submitted supplemental letter briefs about Hospira's failure to oppose amendment on the grounds of futility. *See* Docket Nos. 64, 66. The Court turns to each motion in turn.

## MOTION TO DISMISS

The Court first addresses Hospira's motion to dismiss the FAC. In considering a motion brought pursuant to Rule 12(b)(6), the Court must accept all facts alleged in the FAC to be true and draw all reasonable inferences in Apotex's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim survives a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**A. Duplicative Tort Claims**

Hospira's primary argument for dismissal relies on the independent-tort and related doctrines requiring dismissal of duplicative tort claims. Under New York law — which the parties agree applies, *see* Docket No. 68 ("Tr."), 2-3, 18; *see, e.g.*, *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 611 (2d Cir. 1996) — "a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark-Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190 (N.Y. 1987)); *see also Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) ("*Carvel I*"). Thus, if a plaintiff's "claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische Landesbank*, 692 F.3d at 58. "Put another way," a tort claim must be dismissed as duplicative when "there [is] no injury alleged . . . that a separate [tort] claim would include that is not already encompassed in [the] contract claim." *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 462 (N.Y. 2018). By contrast, if "an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Bayerische Landesbank*, 692 F.3d at 58. For example, "[w]hen a defendant breaches its contract with a plaintiff, that defendant may also breach an independent duty in tort if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." *Carvel I*, 350 F.3d at 16.

The proper application of the independent-tort and related doctrines here depends on the scope of the parties' Agreement and the breach of contract claim. The Agreement and the sixth Novation, the amendment that was made when Hospira succeeded Orchid, contain confidentiality,

supply, and noncompete provisions.  *See* Docket No. 39-1 ("Agreement"); *id.* at 11-13

("Novation").[1]  Apotex alleges that Hospira breached these contractual obligations in seven ways:

> by (i) making . . . the Products available to third parties in the Territory . . . ;
> (ii) systematically and consistently failing to timely supply Apotex . . . ; (iii) secretly using
> Apotex's confidential business information to compete with Apotex by communicating with
> and offering Products to Apotex's customers at lower prices . . . ; (iv) selling [certain
> Products] at prices lower than required by [the Agreement], and failing to pay royalties . . .
> due to Apotex . . . ; (v) failing to prioritize supply to Apotex . . . ; (vi) failing to obtain
> alternative sources from third parties . . . ; and (vii) entering into contracts . . . that impaired
> or inhibited Hospira's ability to perform its obligations under the Agreement.

FAC ¶ 145.  Thus, Apotex's breach of contract claim covers allegations about, first, Hospira's

failure to supply Apotex; second, its unauthorized sales to third parties, in violation of the Novation,

---

[1]     Excerpts of the relevant provisions state:

> Agreement 18.1. Confidentiality. . . . A Party may not use the Confidential
> Information of the other Party for any purpose other than the purposes expressly
> permitted by the Agreement, and shall not disclose such Confidential Information to
> any third party . . .

> Novation 1(H). . . . In the event that Hospira India is unable to supply Product
> in accordance with this Agreement then Apotex shall, in its sole discretion, be
> entitled to (i) require Hospira India to provide replacement product from a third party
> source . . . ; (ii) collect liquidated damages from Hospira India . . . , provided that
> Apotex is in compliance with all of its obligations under this Agreement.  However,
> if Apotex is assessed penalties under a contract with a third party as a result of
> Hospira India's inability to deliver Product, then Apotex may either . . . deduct the
> amount of the penalty from Hospira India's share of the Net Product Sale Price or
> bill Hospira India . . . the amount of such penalty. . . .

> Novation 1(I). . . . Hospira India agrees to solely and exclusively manufacture
> the Products listed in . . . this Agreement . .  for Apotex for marketing and sale in the
> Territory. . . . Apotex agrees to (i) solely and exclusively buy from Hospira India the
> Products listed in . . . this Agreement for marketing and sale in the Territory and (ii)
> to not develop, source, buy or otherwise obtain [material] for the Products during the
> Term.

> Novation 1(J). . . . Hospira India agrees that it will not, nor will it permit or
> cause its Affiliates or any third party, other than Apotex, to enter into any agreement
> or arrangement to sell or offer for sale in the Territory any Products listed in [the
> Agreement] which were manufactured by Hospira India and/or its Affiliates . . . .

*see id.*; Novation 1(H), 1(I), 1(J); and, third, Hospira's misuse of confidential information, *see* Agreement ¶ 18.1.  As a result, any tort claims premised on the failures to supply, unauthorized sales, and misuse of confidential information are duplicative of the contract claim.  *See, e.g.*, *Dormitory Auth*, 94 N.E.3d at 461 (dismissing tort claims as duplicative of contract claims because "the factual allegations set forth in each cause of action are identical, except that the negligence claim is framed in terms of [the] failure to comply with professional standards of care").  With this understanding, the Court will turn to each tort claim.

### 1.  Fraud and Misrepresentation

Apotex's three fraud-based claims — for fraud (Count III), fraudulent concealment (Count IV), and negligent misrepresentation (Count V) — are dismissed under the independent-tort doctrine.  Apotex's fraud and negligent misrepresentation claims allege only that Hospira made materially false statements about its supposed intent and attempts to perform its contractual obligations.  *See* FAC ¶¶ 157-58, 170.  But "intentionally-false statements . . . indicating [an] intent to perform under [a] contract" are "not sufficient to support a claim of fraud under New York law," *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996), unless "(1) the defendant owed a legal duty to the plaintiff separate from the duty to perform under the contract; (2) the defendant makes a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) the plaintiff seeks special damages unrecoverable as contract damages," *Cougar Audio, Inc. v. Reich*, No. 99-CV-4498 (LBS), 2000 WL 420546, at *6 (S.D.N.Y. Apr. 18, 2000) (citing *Bridgestone/Firestone*, 98 F.3d at 19) (internal quotation marks omitted).

Taking those exceptions in reverse order, the third plainly does not apply here.  Although Apotex's fraud claim is accompanied by an allegation that "Apotex has sustained . . . damages distinct from those under its Agreement," FAC ¶ 160, that allegation is insufficient to support a claim for special damages, which "must be alleged with sufficient particularity to identify actual

losses and related causally to the allegedly tortious acts." *Zausner v. Fotochrome, Inc.*, 235 N.Y.S.2d 698, 699-700 (App. Div. 1st Dep't 1962); *see United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996). Second, and similarly, the FAC does not allege any fraudulent conduct that is "collateral or extraneous to the terms of the parties' agreement." *McKernin v. Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (App. Div. 2d Dep't 1991). To the contrary, Hospira's alleged misrepresentations directly concern its performance under the Agreement. Allegations that a defendant "lied only about [its] intention to carry out the express terms of" an existing contract with the plaintiff do not come within the exception for "collateral or extraneous" misrepresentations. *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62-63 (S.D.N.Y. 1994). Instead, they are precisely the type of misrepresentations designed to "lull [Apotex] into a false sense of security . . . to [its] detriment" that the Second Circuit held were not independently actionable in *Bridgestone/Firestone*. *See* 98 F.3d at 19.

Finally, and substantially for the reasons set forth in Hospira's briefs, *see* MTD Mem. 6-8, 18-19; Docket No. 43, at 1-3, the Court concludes that Apotex's fraud-based claims are not based on any legal duty independent of the contract between them. In light of the principles discussed above, Hospira cannot have violated an independent duty by failing "to disclose material facts when one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge" — and Apotex does not seriously argue the point. Docket No. 42 ("MTD Opp.") 14. "[U]nder New York law, the failure to disclose an intention to breach is not actionable as a fraudulent concealment," *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 92 (2d Cir. 2005); finding a "duty to disclose material facts," as Apotex argues, would undermine that principle of law. Similarly, any duty to not misuse Apotex's confidential information cannot have been independent of the parties' contract because that very obligation is

covered by the contract. *See* Agreement ¶ 18.1. Nor can Apotex point to a duty owed to co-venturers. The Agreement expressly disavows any intention to create a joint venture, *see* Agreement ¶¶ 19.3; *id.* Amdt. No. 1 ¶ 15, which is "strong evidence of the parties' lack of the requisite intent," *Slip-N-Slide Records, Inc. v. Island Def Jam Music Grp.*, No. 13-CV-04450 (ALC), 2014 WL 2119857, at *2 (S.D.N.Y. May 21, 2014). And Apotex points to no competing "extraordinary circumstances," as would be necessary to find a joint venture in this context. *See id.* ("Where . . . parties deal at arm's length in a commercial transaction . . . , no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise *absent extraordinary circumstances*." (internal quotation marks omitted)).

That leaves Apotex's last proposed "independent duty": a contracting party's duty not to "use[] the contract to injure the other." MTD Opp. 10. New York courts have recognized that the "legal common law duty . . . not to act wilfully to destroy the property of another" extends to contracting parties, even if the contract between them touches on the property in question. *Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 277 N.Y.S.2d 505, 511 (App. Div. 1st Dep't 1967); *see Carvel I*, 350 F.3d at 16. As the New York Court of Appeals explained, however (in what New York courts have called the "leading case on the subject," *Albemarle Theatre*, 277 N.Y.S.2d at 509), "the theory of the complaint" in such a case

> is that a breach of contract may be so intended and planned; so purposely fitted to time, and circumstances and conditions; so inwoven into a scheme of oppression and fraud; so made to set in motion innocent causes which otherwise would not operate, as to cease to be a mere breach of contract, and become, in its association with the attendant circumstances, a tortious and wrongful act or omission.

*Rich v. N.Y. Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 398 (1882). To violate that duty, therefore, a defendant must intend more than the breach of contract; the defendant must intend the whole "scheme of oppression and fraud" of which the breach is an instrumental part. Put differently, the duty in question is not a duty not to breach contracts; it is a duty not to "wilfully . . .

destroy the property of another." *Albemarle Theatre*, 277 N.Y.S.2d at 511. It follows that to allege a breach of that duty, a plaintiff must allege more than a willful breach of contract — instead, a plaintiff must allege willful conduct by the defendant specifically designed to harm the plaintiff, as opposed to gaining some desired advantage for itself. *Cf. Carvel Corp. v. Noonan* ("*Carvel II*"), 818 N.E.2d 1100, 1103 (N.Y. 2004) (distinguishing, in the context of intentional interference with prospective economic advantage, between acting out of "normal economic self-interest" and acting "solely to hurt the [plaintiffs]"). Apotex does not plausibly allege such conduct here; the gravamen of its claims are a willful breach of the parties' contract.

The same goes for Apotex's fraudulent concealment claim, which is founded on the allegation that Hospira "withheld" — that is, failed to disclose — "the fact of the competitive scheme by which it failed to honor" certain provisions of the Agreement. FAC ¶ 164. But "the failure to disclose an intention to breach is not actionable as a fraudulent concealment." *TVT Records*, 412 F.3d at 92. That conclusion is not changed by the allegation that Hospira withheld the information in order to compete with Apotex. *See* FAC ¶ 163 (alleging that Hospira "tied up third party alternative sources of supply for its own product"), *id.* ¶164 (alleging that Hospira "withheld from Apotex the fact of the competitive scheme"). Even with that allegation, the fraudulent concealment claim does not allege a "distinct fraudulent misrepresentation[]" because the alleged harm remains grounded in Hospira's dishonesty about its supply, a matter covered by the Agreement. *See, e.g.*, *TVT Records*, 412 F.3d at 92 (dismissing a tort claim as "insufficiently distinct from the breach of contract claim" because it was based on allegations about "the motives for the breach" not "fraudulent misrepresentation[s] collateral or extraneous to the contract");

*Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (dismissing a claim that "is simply a breach of contract claim in the tort clothing of . . . allegations of an intent to breach").[2]

### 2. Unfair Competition

Apotex's claim for unfair competition (Count IX) is also dismissed as duplicative. "Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim" must be "dismissed as duplicative of the breach claim." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 508 (S.D.N.Y. 2018); *accord Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007). That is the case here. Apotex's claim alleges that, "[d]espite Hospira's obligation to keep Apotex's confidential information confidential and use it solely for purposes of the Agreement, Hospira misappropriated [Apotex's confidential] information and used it to unfairly compete with Apotex, including by using Apotex's confidential pricing information to match Apotex's prices . . . and steal customers." FAC ¶ 202. But — as that very allegation implies — the Agreement prohibits the use of such confidential information, *see* Agreement ¶ 18.1, and the breach of contract claim includes an allegation about the misappropriation of information, including when used to sell to Apotex's customers, *see* FAC ¶ 145.

Additionally, there is no plausible allegation that Hospira "acted in bad faith" by "obtaining access to plaintiff's business [information] through fraud or . . . abuse of a . . . confidential relationship," which might enable Apotex to state an unfair competition claim independent of its contract claim. *Telecom Int'l*, 280 F.3d at 197; *see id.* (dismissing an unfair competition claim based on misappropriated information where "there [wa]s no evidence that [the defendant] acted in bad faith"); *cf. Mitzvah Inc. v. Power*, 966 N.Y.S.3d 3, 5-6 (App. Div. 1st Dep't 2013) (sending to

---

2       In light of that conclusion, the Court need not and does not reach Hospira's alternative arguments for dismissal of the fraud claims.

trial an allegation that "defendants engaged in unfair competition by misappropriating client information . . . , and using it to defendants' commercial advantage" where the defendant "was not subject to noncompetition agreements, or other written policies governing the use of [the confidential] information"). Apotex admits that "[t]he partnership between Orchid and Apotex flourished for six years," FAC ¶ 16, and that, through 2019, Hospira continued to supply some products pursuant to the Agreement, *see id.* ¶¶ 65-67. Thus, Apotex cannot allege that Hospira entered into or remained a party to the Agreement "only" to obtain Apotex's information, as could demonstrate bad faith. *See, e.g.*, *Telecom Int'l*, 280 F.3d at 198 (granting summary judgment and dismissing an unfair competition claim where there was "no evidence" that the defendant used the relationship "as a guinea pig only to test ideas with a view to setting up [the defendant's own] system").

### 3. Breach of Implied Covenant of Good Faith

Next, the breach of the implied covenant of good faith claim (Count VIII) must also dismissed as duplicative. "Under New York law, parties to an express contract are bound by an implied duty of good faith." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (internal quotation marks omitted). But because a breach of that implied duty is "merely a breach of the underlying contract," where "a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.* (internal quotation marks omitted). Breach of contract and implied covenant claims "are duplicative when both arise from the same facts and seek the identical damages." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (internal quotation marks omitted). Here, the implied covenant claim does not allege facts separate from those underlying the breach of contract. The claim alleges simply that Hospira intentionally failed to supply Apotex and used confidential price information to undersell Apotex, *see* FAC

¶¶ 194, 195, 197, which were the allegations that underlie Apotex's breach of contract claims as well, *see id.* ¶ 145; *see also* Agreement ¶ 18.1; Novation 1(H), 1(I), 1(J).

### 4. Tortious Interference

The tortious interference claims (Counts VI and VII) fare no better. To state a claim under New York law for tortious interference with business relations — prospective or otherwise — a plaintiff must allege that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (internal quotation marks omitted). Under the "independent tort" doctrine, a tortious-interference plaintiff who has contracted with the defendant must still "prove that the defendant breached a duty 'independent' of its duties under the contract; otherwise [the] plaintiff is limited to an action in contract." *Carvel I*, 350 F.3d at 16. To survive dismissal, therefore, Apotex must allege that Apotex's "wrongful" conduct violated a tort duty independent of its obligations under the Agreement. *See id.* at 17 (holding that, to be liable for tortious interference to a plaintiff with whom it is a contracting party, a defendant must go "further" than "merely violat[ing] an express or implied obligation entailed in the" contract and instead must "violat[e] an independent duty in tort," for example by "*willfully* causing damage to [the plaintiff's] prospective business relationships"). As the Court has already explained, however, Apotex's allegations of wrongful or tortious conduct all implicate matters covered by the Agreement. Thus, the tortious interference claims must be and are dismissed.[3]

---

[3]     Once again, the Court need not and does not reach Hospira's alternative arguments for dismissal of the intentional interference claim.

### 5. Unjust Enrichment

The unjust enrichment claim (Count IX) fails for a similar reason.[4]  Apotex admits, and

Hospira agrees, that an unjust enrichment claim generally does not survive "where [the] matter is

the subject of a contract," MTD Mem. 21-22; MTD Opp. 24, and it is well established that when all

parties to the unjust enrichment claim are also parties to a contract covering the same subject matter,

"recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily

precluded," *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009).

That is, Apotex may plead unjust enrichment for claims that do not "aris[e] out of the same subject

matter" as its contract claim, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.,

Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006), but is barred from pleading unjust enrichment "where the

scope of the contract clearly covers the dispute between the parties," *Mid-Hudson Catskill Rural

Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation

marks and alteration omitted); *see also IDT Corp.*, 907 N.E.2d at 274.  The Court has already found

that Apotex's tort claims are duplicative of its contract claims, in part because those tort claims arise

out of the same facts that support Apotex's claims under the Agreement and Novation.  Because the

same is true of Apotex's unjust enrichment claim, it follows that that claim must also be dismissed.

## B.  FDUTPA

By contrast, Apotex's FDUTPA claim (Count II) — which is obviously governed by Florida

law (*i.e.*, FDUTPA), *see* MTD Mem. 19-20; MTD Opp. 22-23; Tr. 2-3; *see also* Tr. 18, 35 —

survives.  FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices,

and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann.

§ 501.204(1).  A FDUTPA claim is generally treated as distinct from an underlying contract or tort

---

[4]      The FAC mistakenly labels both the unfair competition claim and the unjust enrichment
claim as Count IX.  The unjust enrichment claim should be labeled as Count X.

claim because the statute "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *State, Office of Attorney Gen. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) (internal quotation marks omitted); *see, e.g.*, *Contractor's Mgmt. Sys. of NH, Inc. v. Acree Air Conditioning, Inc.*, 799 So. 2d 320, 321 (Fla. Dist. Ct. App. 2001) (noting that a FDUTPA claim, unlike a contract claim, is not "solely for the benefit of the parties to the agreement").  In accordance with this principle, Florida appellate courts have found that contract-based FDUTPA claims survive even when the underlying breach of contract claims do not, *see, e.g.*, *Fendrich v. RBF, LLC*, 842 So. 2d 1076, 1079 (Fla. Dist. Ct. App. 2003), and that related breach of contract and FDUTPA claims can proceed together, *see, e.g.*, *Airflo A/C & Heating, Inc. v. Pagan*, 929 So. 2d 739, 741-42 (Fla. Dist. Ct. App. 2006) (affirming that there was both a breach of contract and a FDUTPA violation in a situation where the FDUTPA claim was based on "[a]cts that were a 'breach' of the agreement").  The Florida Supreme Court has clarified that, "[t]o the extent an action giving rise to a breach of contract . . . may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003).

Despite this general approach, Hospira argues that Apotex's FDUTPA claim "must be dismissed as duplicative of its breach of contract claim."  MTD Mem. 19.  Apotex relies on *Rebman v. Follett Higher Education Group., Inc.*, 575 F. Supp. 2d 1272 (M.D. Fla. 2008), in which the court dismissed FDUTPA claims as duplicative where the plaintiffs had "challenge[d] the act of breaching the Agreement as unfair or deceptive rather than the act giving rise to the breach." *Id.* at 1279.  But the *Rebman* rule does not apply here because Apotex does not allege that the *breach* was an unfair business practice; instead, Apotex alleges that Hospira violated FDUTPA by "us[ing] opportunities it only gained under its contract with Apotex to unfairly compete against it and to capture Apotex'[s] market share in Florida."  FAC ¶ 152.  And Apotex further alleges that an act

giving rise to the breach (but not the breach itself) was deceptive: that "Hospira lied to Apotex

about its present activity, leading Apotex to believe it was trying to resolve manufacturing issues at

IKKT and find third party sources, when it was not." *Id.* That is, the FAC alleges not only that

Hospira breached the Agreement, but also that it did so in a way that was itself unfair and deceptive.

Accordingly, the FDUTPA claim — unlike Apotex's common-law tort claims — survives

Hospira's motion to dismiss. *See, e.g.*, *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info.*

*Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1313 (S.D. Fla. 2010) (denying dismissal of a FDUTPA

claim that "allege[s] something more than a mere breach").

**C. Damages**

Turning to the issue of damages, Hospira argues that Apotex cannot seek special and

punitive damages.  More specifically, Hospira contends that the Agreement's limitation on liability

precludes any award of special damages under New York law and that Florida law bars punitive

damages. *See* MTD Mem. 22-24.  (Hospira does not challenge Apotex's entitlement to direct

damages under New York common law and FDUTPA. *See id.*; FAC p. 56 ¶ 1; Fla. Stat. Ann.

§ 501.211(2) (providing for "actual damages, plus attorney's fees and court costs").)  The Court will

begin with New York law and then turn to Florida law.

**1. Damages Under New York Common Law**

Hospira is correct that, under New York law, Apotex is entitled only to contract damages.

Apotex's only surviving claim under New York law is the contract claim and, under New York law,

"[c]ourts must honor contractual provisions that limit liability or damages" when dealing with

contractual claims. *See Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 92

N.E.3d 743, 748 (N.Y. 2017).  Thus, Apotex is bound by the Agreement and Novation's limitation

on damages.

That said, it is unclear what limit the Agreement and Novation impose on damages. The Agreement states that "[i]n no event shall either party have any liability to the other party . . . for *any lost opportunity or profits*, or for any indirect, incidental, consequential, punitive, or special damages arising out of a breach of this Agreement, under any cause of action or theory of liability (including negligence)." Agreement ¶ 17.6 (emphasis added); *see* MTD Mem. 22. But the Novation appears to allow lost profit damages: It states that, if Hospira is unable to supply products as required, Hospira shall pay "liquidated damages . . . equal to the average historical profit split levels" and shall pay any penalty assessed under a third-party contract "as a result of Hospira's . . . inability to deliver Product." Novation 1(H); *see* FAC ¶ 55. At the very least, the Novation's explicit allowance of liquidated damages for lost profits renders ambiguous the Agreement's unequivocal statement forbidding damages for "any lost opportunity or profits." *See Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014) (noting that a contract is ambiguous when "specific language" in it "is susceptible of two reasonable interpretations"); *see, e.g.*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 296-97 (2d Cir. 2015) (finding a contract ambiguous where it was not certain how different provisions related to each other). At this stage, that ambiguity is enough to defeat dismissal of the claim for special damages because "a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Bayerische Landesbank*, 692 F.3d at 53; *see, e.g.*, *id.* at 54 (reversing dismissal where the contract "d[id] not, on its face, specifically foreclose [the plaintiff's] theory of recovery").[5]

---

[5]      Hospira does not argue that Apotex fails to state a claim for punitive damages, relying exclusively on the Agreement's limitation on liability to argue for dismissal. *See* Tr. 17. To establish an entitlement to punitive damages arising from a breach of contract, "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) (citations omitted). To be of an "egregious nature," the conduct must "evinc[e] a high degree of moral turpitude and demonstrat[e] such wanton dishonesty as to imply a criminal indifference to civil obligations." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940,

## 2. Damages Under FDUTPA

Next, Hospira argues that the damages Apotex seeks under FDUTPA — actual damages, attorney's fees and costs, and punitive damages, *see* FAC p. 56 ¶ 1(b) — must be limited in two ways. First, Hospira contends that Apotex cannot seek punitive damages under FDUTPA. *See* Docket No. 65, at 1. On that score, Hospira is correct: "A claim for punitive damages is outside the scope of chapter 501 and the FDUTPA." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585-86 (Fla. Dist. Ct. App. 1984); *see also Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So. 2d 311, 314 (Fla. Dist. Ct. App. 2007) (describing punitive damages as "clearly beyond the scope of a 501 proceeding" (internal quotation marks omitted)); *JAWHBS, LLC v. Arevalo*, No. 15-CV-24176 (DPG), 2017 WL 1345141, at *10 (S.D. Fla. Apr. 12, 2017) ("FDUTPA does not provide for punitive damages.").

Second, Hospira argues that the "limitation on liability provision . . . is consistent with FDUTPA" because both prohibit recovery of consequential damages, including lost profit damages. *See* Docket No. 65, at 1.[6] The parties agree that "special, consequential, and incidental damages . . . are not available under FDUTPA." *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. Dist. Ct. App. 2004); *see* Docket Nos. 65, 67; *see also Stewart Agency, Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 214 (Fla. Dist. Ct. App. 2019); *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824-25 (Fla. Dist. Ct. App. 2010). But Apotex argues that "what Hospira characterizes as lost profit damages are actually an element of what the Agreement specifies are actual damages," and

---

943 (N.Y. 1994) (internal quotation marks omitted). The Court is skeptical that Apotex's allegations meet this high standard — to the extent that the Agreement's limitation on liability would even permit that inquiry — but declines to address the issue in the absence of briefing.

[6]     Hospira does not (and could not in good faith) argue that the Agreement's limitation on liability applies to the FDUTPA claims. *See* Docket No. 43 ("MTD Reply"), at 9-10; Docket No. 65; *Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87, 89 (Fla. Dist. Ct. App. 2003) ("Any attempt to limit FDUTPA liability is contrary to public policy.").

thus are permissible. Docket No. 67, at 1. Apotex's characterization of the damages fails, however, because under FDUTPA, "'actual damages' . . . cannot include consequential or special damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008). Instead, actual damages under FDUTPA must be measured as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 3920353, at *26 (S.D.N.Y. July 15, 2016) (internal quotation marks omitted). Accordingly, the FDUTPA damages that Apotex may seek are only benefit of the bargain damages, attorneys' fees, and costs; all other requests for FDUTPA damages are dismissed.

## LEAVE TO FILE AN AMENDED COMPLAINT AND ADD A PARTY

With that, the Court turns to Apotex's motion for leave to file an amended complaint and to add a party. The latter request — to add Hospira, Inc., as a party, pursuant to Rule 21 of the Federal Rules of Civil Procedure — is unopposed, *see* SAC Opp. 5 n.2, and is "just," Fed. R. Civ. P. 21, and thus granted. As for the former request, Rule 15 provides that courts should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). In addition, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any . . . event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Reflecting "the law's strong preference for resolving disputes on the merits," *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015) (internal quotation marks omitted), the "rule" in the Second Circuit is that a party is allowed "to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith," *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (internal quotation marks omitted); *see also City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011). "A litigant may be 'prejudiced' within the meaning of the rule if the

new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Pasternack*, 863 F.3d at 174 (internal quotation marks omitted). "[M]ere delay" or "complaints of the time, effort and money expended" in litigation do "not provide a basis for a district court to deny the right to amend." *Id.* (internal quotation marks omitted).

Applying those standards here, the Court grants Apotex's motion for leave to file an amended complaint. Contrary to its assertions, Hospira will not be prejudiced by the proposed amendments. First, Hospira has not shown how the proposed amendments will necessitate meaningfully more discovery given Apotex's representation — which the Court will enforce — that it will not need additional discovery and given that market share and competitors' data were relevant to the allegations in the FAC. *See* Docket No. 61 ("SAC Reply"), at 9. In any event, the addition of Hospira, Inc., will at least somewhat alter the scope of discovery, making the marginal expansion of discovery due to the new claims less burdensome. On the second factor, the amendment is timely in that it adds allegations of conduct that post-date the FAC, including the decision to close IKKT in January 2019. *See* PSAC ¶¶ 151-159; SAC Mem. (filed on April 16, 2019). And the amendment will not cause undue delay because, despite the fact that discovery is set to close on August 16, 2019, *see* Docket No. 31, Hospira has not yet produced any documents or taken any depositions, *see* SAC Reply 10; Hospira plans to file another motion to dismiss, which itself will cause additional delay, *see* SAC Opp. 6 n.3; and the case is barely a year old, *cf. City of New York*, 649 F.3d at 158 (denying leave to amend when leave was sought three years into the case, after filing of motions for summary judgment); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726-27 (2d Cir. 2010) (same). Thus, Hospira fails to show that Apotex's amendment would cause sufficient prejudice to justify denial of leave to amend. *See, e.g.,*

*Pasternack*, 863 F.3d at 174 (reversing denial of leave to amend when "essentially no discovery ha[d] been undertaken" and the "proposed amended complaint would be the first complaint to be considered after the district court decided a motion to dismiss").

Nor does Hospira show that Apotex acted in bad faith. As a preliminary matter, it is Hospira's burden to show bad faith, *see id.* (requiring a showing by the nonmovant), and Hospira does not even argue bad faith, but only "lack of good faith," SAC Opp. 10, 11; *see, e.g.*, *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 110 (2d Cir. 2014) (finding no bad faith where nonmovant did not "point[] to any evidence of bad faith"). In any event, Hospira's assertion that the IKKT closure allegations are brought "to gain leverage over Hospira," *see* SAC Opp. 13, is unconvincing given that the IKKT closure is a new and plainly relevant fact. *See generally* Fed. R. Civ. P. 15(d). And Hospira's remaining contentions sound more in futility than bad faith, *see, e.g.*, SAC Opp. 8 (Apotex "makes allegations that undermine its monopoly claims altogether"); *id.* at 11 (criticizing Apotex for "pick[ing] one month of market share data from nearly three years ago"), but Hospira chose not to brief the futility issue, *see* Docket No. 66. Accordingly, the Court declines to address those arguments here. *See, e.g.*, *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013) ("The party opposing the amendment has the burden of demonstrating that leave to amend would be futile."). Instead, because Hospira fails to show prejudice or bad faith, Apotex is granted leave to file a second amended complaint.

The final issue regarding Apotex's proposed amendment is the proper scope of that amendment. First, for the reasons provided above, the second amended complaint may include the new allegations and claims in the Proposed SAC — the claims regarding monopolization and attempted monopolization. *See, e.g.*, PSAC ¶¶ 169-192. Second, Apotex may amend the claims alleged in the FAC and dismissed in this Opinion and Order, *see, e.g.*, *Loreley Fin. (Jersey) No. 3*

*Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 n.22 (2d Cir. 2015) (remanding to permit amendment of certain claims and, in doing so, finding "no harm . . . in permitting Plaintiffs to replead [other dismissed] claims as well"), provided that Apotex amends only those claims for which amendment is not futile. That is, Apotex may amend the dismissed claims if and only if there is a non-frivolous argument that amendment is not futile; if Apotex frivolously repleads futile claims, it may face sanctions. *See, e.g.*, *Wiley v. Citibank, N.A.*, No. 98-CV-1139 (DAB), 2000 WL 122148, at *6 n.6 (S.D.N.Y. Feb. 1, 2000) ("[F]ailure to replead adequately any cause of action may subject a party to Rule 11 sanctions."). Third, Apotex may remove from the second amended complaint any dismissed counts that it does not replead. Apotex may not make any other substantive change to the complaint absent leave of Court.

## CONCLUSION

For the reasons stated above, Hospira's motion to dismiss is GRANTED IN PART and DENIED IN PART, and Apotex's motion for leave to file a second amended complaint is GRANTED. Any amended complaint by Apotex is due **within fourteen days** of this Opinion and Order. Any motion to dismiss by Hospira is due **within twenty-one days** of the amended complaint being filed. If Hospira files such a motion, any opposition is due **within twenty-one days** of the motion being filed; any reply is due **within fourteen days** of the opposition. In the event that Hospira and Hospira, Inc., do move to dismiss the Second Amended Complaint, they may make any arguments they wish, including that the new allegations fail to state a claim, subject — of course — to the rulings that this Court has already made.

The Clerk of Court is directed to terminate Docket Nos. 37 and 55.


SO ORDERED.

Dated: July 12, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge